# 2003 DTA 73

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I DE SAN JUAN
## PANEL II

### HUMBERTO R. VAZQUEZ OLIVERAS
Querellante-Recurrente

v.

### NEGOCIADO DE ASISTENCIA CONTRIBUTIVA Y LEGISLACION DEL DEPARTAMENTO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
Querellado-Recurrido

Núm. KLRA-02-00555

San Juan, Puerto Rico, a 14 de abril de 2003

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
la Juez Peñagarícano Soler y la Juez Bajandas Vélez

Bajandas Vélez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente, Dr. Humberto R. Vázquez Oliveras, acude ante nos solicitando la revocación de la Resolución emitida por el Negociado de Asistencia Contributiva y Legislación del Departamento de Hacienda (el Negociado) el 17 de mayo de 2002 y notificada el 21 de mayo de 2002. Mediante dicha resolución, el Negociado declaró no ha lugar la querella presentada por el recurrente para que se reconocieran como exentas de tributación las dietas recibidas en el 1998 como Presidente del Tribunal Examinador de Médicos.

Visto el expediente, conjuntamente con los documentos que se incluyen en el Apéndice y analizado el derecho aplicable, resolvemos expedir el auto de revisión solicitado, confirmar la Resolución recurrida en cuanto a lo resuelto sobre las aludidas dietas y devolver el caso al Departamento de Hacienda para que se dilucide el reclamo del recurrente sobre el reembolso de los gastos.

I

El Departamento de Hacienda le notificó al contribuyente, Dr. Humberto R. Vázquez Oliveras, un ajuste de $9,980.81 en su planilla de contribución sobre ingresos correspondiente al año contributivo 1998. Dicho ajuste provenía de la contribución a ser satisfecha sobre la cantidad de $24,096.24 pagada al contribuyente por el Departamento de Salud por concepto de dietas devengadas como Presidente del Tribunal Examinador de Médicos (TEM).

Inconforme con el ajuste notificado, el 27 de agosto de 2001, el Dr. Vázquez Oliveras le envió una carta a la Lic. Mariana Contreras, Directora del Negociado. En la misma explicó las razones por las cuales entendía que el ajuste no procedía y solicitó que la deuda contributiva imputada fuese eliminada. Apéndice IV del Recurrente, pág. 9.

En esencia, alegó que la Ley Núm. 22 de 22 de abril de 1931, que creó el TEM, según enmendada en el 1996, 20 LPRA Sec. 38, adoptó para sus miembros la misma exención contributiva establecida en el Código de Rentas Internas de 1994 para las dietas recibidas por los miembros de la Asamblea Legislativa. Expuso, igualmente, que los gastos incurridos en su función como Presidente del TEM sobrepasaron la cantidad devengada por concepto de dietas, por lo que las mismas no representaron ingresos tributables, ganancia o lucro alguno para éste.

Mediante carta fechada, el 22 de octubre de 2001, la Lic. Contreras le informó al recurrente que el Código de Rentas Internas era claro al señalar que la exención concedida a los miembros de la Asamblea Legislativa estaba únicamente dirigida a éstos, por lo que no procedía extender la misma a otros funcionarios. Respecto al segundo planteamiento del Dr. Vázquez Oliveras, expresó que el Comprobante de Retención (Formulario 499R-2/W-2PR) expedido por el Departamento de Salud reportó las dietas como "*sueldos*", por lo que el Departamento de Hacienda había actuado correctamente al incluir dicha cantidad como ingreso, razón por la cual procedía el ajuste. Apéndice V del Recurrente, págs. 11-12.

No estando de acuerdo con lo decidido por la Lic. Contreras, el 21 de noviembre de 2001, el Dr. Vázquez Oliveras presentó ante la Secretaría de Hacienda una querella formal esbozando los mismos fundamentos incluidos en su carta de 27 de agosto de 2001. La querella fue referida al Negociado, quien la contestó el 8 de febrero de 2002. Apéndice VII del Recurrente, pág. 18. En cuanto a la exención contributiva solicitada, el Negociado alegó que ésta únicamente aplicaba a los miembros de la Asamblea Legislativa. Respecto a la alegación del recurrente de que la cantidad recibida por éste como dietas constituia un reembolso de los gastos incurridos, el Negociado adujo que según el Comprobante de Retención del Departamento de Salud, la cantidad pagada al recurrente fue por concepto de "*sueldos*". A base de ello, sostuvo que el Departamento de Hacienda había actuado correctamente al estimar que dichos ingresos eran tributables. No obstante, le sugirió al querellante que, de entender que el Departamento de Salud había cometido un error al informar sus ingresos, debía comunicarse con la Oficina de Finanzas de dicho departamento para que ésta lo aclarase.

El recurrente acogió la sugerencia del Negociado y como resultado de sus gestiones, el Departamento de Salud expidió un Comprobante de Retención corregido. Apéndice VIII del Recurrente, pág. 22. En el mismo se indicó que "*Se enmienda para que se refleje como pago (sic) dieta a miembro de Junta y no salario*". *Id*. Así, la cantidad originalmente designada como "*sueldos*" fue incluida en la sección titulada "*concesiones*" o "*allowances*".

El 18 de abril de 2002, se celebró la vista administrativa ante la Oficial Examinadora, Lic. Ana J. Bobonis Zequeira, compareciendo el recurrente y el Negociado, representado por la Sra. Aidita Figueroa. ■ Por Resolución emitida el 17 de mayo de 2002, la Oficial Examinadora rechazó los dos argumentos del contribuyente y declaró no ha lugar la querella presentada por éste. Resolvió que las dietas de los miembros del TEM no gozaban de exención contributiva de conformidad con la Sec. 1022(b)(18) del Código de Rentas Internas de 1994, 13 LPRA Sec. 8422(b)(18). Determinó, además, que en cuanto a los gastos incurridos por el Dr. Vázquez Oliveras en el ejercicio de su función pública, el contribuyente "*debió llenar su planilla teniendo en mente dichos gastos y evidenciando los mismos*". Apéndice I del Recurrente, pág. 2. Oportúnamente, el 11 de junio de 2002, el recurrente solicitó reconsideración. Apéndice III del Recurrente.

Habiendo transcurrido el plazo de ley sin que el Negociado actuara en torno a la moción de reconsideración, el recurrente presentó el 24 de julio de 2002, el recurso de revisión de autos. Señaló que el Negociado había cometido los siguientes errores:

"*ERRO LA AGENCIA ADMINISTRATIVA AL NEGARSE A RECONOCER QUE LA DIETAS DE LOS MIEMBROS DEL TEM ESTAN EXENTAS DEL PAGO DE CONTRIBUCIONES TAL CUAL LO ESTAN LAS DIETAS DE LOS MIEMBROS DE LA ASAMBLEA LEGISLATIVA.*

*ERRO LA AGENCIA ADMINISTRATIVA AL NO PERMITIR AL SOLICITANTE ENMENDAR SU PLANILLA PARA RECLAMAR LOS REEMBOLSOS A QUE TIENE DERECHO POR GASTOS INCURRIDOS EN EL DESEMPEÑO DE SUS FUNCIONES PUBLICAS, LOS CUALES SOBREPASAN EL MONTO DE LAS DIETAS DEVENGADAS.*"

Por Resolución de 23 de agosto de 2002 concedimos a la parte recurrida treinta días para que se opusiera al

recurso de revisión, lo cual hizo el 30 de septiembre de 2002. En vista de que, de ordinario, las decisiones del Secretario de Hacienda se revisan mediante juicio *de novo*, previa presentación de una demanda ante el Tribunal de Primera Instancia, ▮ el 30 de octubre de 2002 requerimos al Procurador General que se expresara respecto al trámite habido ante el Departamento de Hacienda. Específicamente, le solicitamos que acreditara la jurisdicción del Tribunal de Circuito de Apelaciones sobre el recurso de revisión del epígrafe.

A tenor con lo ordenado, el 18 de noviembre de 2002, el Procurador General presentó *"Escrito en Cumplimiento con Resolución"*. Analizados los fundamentos esbozados en el aludido escrito, concluimos que tenemos jurisdicción para atender la controversia planteada en el recurso de revisión judicial aquí instado.

La Sec. 4.1 de la LPAU, 3 LPRA Sec. 2171, exceptúa de la revisión judicial de los procedimientos adjudicativos formales de las agencias, las órdenes, disposiciones y providencias dictadas por el Secretario de Hacienda con relación a las Leyes de Rentas Internas. Así, dispone que éstas serán revisadas mediante la presentación de una demanda y la celebración de un juicio *de novo* ante la sala con competencia del Tribunal de Primera Instancia. No empece ello, el Código de Rentas Internas, 13 LPRA Secs. 8001 y ss, exceptúa de dicha norma varios procedimientos administrativos que se llevan a cabo ante dicho departamento.

De este modo, la Sec. 6002 del Código de Rentas Internas de 1994, 13 LPRA Sec. 8022(g), dispone que cuando la tasación ▮ es atribuible a un error matemático ▮ o administrativo, la notificación no será considerada como una de deficiencia, por lo que el contribuyente no tendrá derecho a presentar una demanda ante el Tribunal de Primera Instancia. Textualmente esta sección dispone:

*"(g) Exenciones a las restricciones a tasación.-*

*(1) Tasación atribuible a error matemático o administrativo.- Si el contribuyente fuere notificado de que, debido a un error matemático o administrativo que aparece en la faz de la planilla, o declaración de impuesto, adeuda una contribución en exceso de aquélla declarada en la planilla o declaración de impuesto y de que una tasación de la contribución se ha hecho o será hecha sobre la base de lo que habría sido el monto correcto de la contribución, a no ser por el error matemático clerical (sic), tal notificación no será considerada como una notificación de deficiencia bajo el inciso (a) de esta sección o el inciso (f) anterior; y **el contribuyente no tendrá derecho a radicar un recurso ante el Tribunal de Primera Instancia basado en dicha notificación**, ni dicha tasación o cobro serán prohibidos por las disposiciones del inciso (a) de esta sección. Toda notificación bajo esta cláusula expresará la naturaleza del alegado error y la explicación del mismo."* (Enfasis nuestro.) 13 LPRA Sec. 8022(g)(1).

A tenor con la normativa expuesta, y por originarse el ajuste impugnado en un error matemático, concluimos que el procedimiento de revisión judicial es el apropiado y que este foro tiene jurisdicción para entender en el mismo. Pasamos a atender los méritos de los errores señalados.

**II**

Como cuestión de umbral, reafirmamos el principio de que a toda determinación administrativa le cobija una presunción de legalidad y corrección. *E.L.A. v. Lucas Malavé h/n/c Supermercado Jardines de Caparra*, **2002 J.T.S. 103**, ____ D.P.R. ____ (2002). Dicha presunción deberá sostenerse por los tribunales a menos que la misma logre ser derrotada. *A.R.P.E. vs. Junta de Apelaciones Sobre Construcciones y Lotificaciones*, 124 D.P.R. 858, 864 (1989); *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987); *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Ello, debido a que las agencias administrativas poseen la experiencia y conocimientos altamente especializados sobre los asuntos que están dentro del ámbito de sus facultades y responsabilidades. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 533 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales*, 133 D.P.R. 567, 589 (1993).

En vista de lo anterior, resulta que toda intervención con dichas determinaciones sólo estará justificada cuando la agencia haya obrado arbitraria, ilegalmente, o en forma tan irrazonable que su actuación constituya un abuso de discreción. Del mismo modo, se intervendrá cuando la determinación no pueda ser sostenida a la luz de la doctrina de la evidencia sustancial. *Mun. de San Juan v. J.C.A.,* **2000 J.T.S. 193**, 152 D.P.R. ____ (2000); *Misión Industrial de P.R., Inc. v. Junta de Planificación,* 146 D.P.R. 64, 131 (1998); *Fuertes v. A.R.P.E.,* 134 D. P.R. 947, 953 (1993); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975).

El principio de la evidencia sustancial limita la intervención judicial con las determinaciones de un organismo administrativo, en la medida en que éstas estén sostenidas por evidencia que surja del expediente administrativo, considerado en su totalidad. *Metropolitana, S.E. v. A.R.P.E.,* 138 D.P.R. 200 (1995); *Puerto Rico Telephone Co. v. Unión Independiente,* 131 D.P.R. 171, 211 (1992).

El principio jurisprudencial de la evidencia sustancial fue acogido en la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175. Dicha sección dispone, en lo pertinente, que *"...las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo".* A estos fines, se ha definido como *"aquella [prueba] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión".* *Ramírez v. Departamento de Salud,* 147 D.P.R. 901, 905 (1999); *Associated Insurance v. Comisionado de Seguros,* 144 D.P.R. 425, 437 (1997); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

La determinación judicial de que no existe evidencia sustancial que sostenga las determinaciones de la agencia administrativa conlleva que la parte afectada demuestre que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba".* *Metropolitana v. A.R.P.E., supra,* a la pág. 213, (citando a *Hilton Hotels v. Junta de Salario Mínimo, supra*).

Respecto a las determinaciones de derecho de la agencia, el Tribunal Supremo de Puerto Rico ha expresado:

*"Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas 'en todos sus aspectos por el tribunal', LPAU, sec. 4.5, 3 L.P.R.A. § 2175 (1992), sin sujeción a norma o criterio alguno. Véase, Miranda v. Comisión Estatal de Elecciones, ante. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente -antes y después de la vigencia de la LPAU- que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. (Citas omitidas.)"* *Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico,* **2000 JTS 98**, a la pág. 1266.

Por su parte, está reconocido que el TEM tiene como función principal la autorización del ejercicio de la práctica de la medicina. Como institución está reglamentada por la Ley Núm. 22 de 22 de abril de 1931, según enmendada. Entre los aspectos que la misma regula y que son pertinentes a la controversia de autos está el de la dieta y millaje de sus miembros. Así, la referida medida dispone que cada miembro del TEM tiene derecho a devengar dietas en la suma de $50.00 por cada día o fracción de éste en que prestare sus servicios y a cobrar millaje según establecido en los reglamentos del Departamento de Hacienda. Particularmente, la Ley señala que:

*"A partir del 1ro de enero de 1997, **los miembros del Tribunal Examinador recibirán dietas equivalentes***

*a la dieta mínima establecida en la sec. 29 del Título 2, para los miembros de la Asamblea Legislativa por asistencia a sesiones o reuniones de comisión, por cada sesión, reunión extraordinaria o de comité u otro organismo o realización de encomienda autorizada por el Presidente del Tribunal Examinador a la que asistan, excepto aquéllos que sean jefes de agencias del Estado Libre Asociado de Puerto Rico y sus instrumentalidades, salvo el Presidente del Tribunal Examinador, quien recibirá una dieta equivalente al ciento treinta y tres por ciento (133%) de la dieta que reciban los demás del Tribunal Examinador."* (Enfasis nuestro.) 20 LPRA Sec. 38.

La Ley Núm. 100 de 4 de agosto de 1996, tuvo el propósito de enmendar la Ley Núm. 22, para reconocer el derecho de los miembros del TEM a recibir, a partir del 1ro de enero de 1997, dietas equivalentes a la dieta **mínima** de los miembros de la Asamblea Legislativa. Ello, para evitar tener que enmendar continuamente la mencionada Ley Núm. 22 en cuanto a este aspecto. En su parte pertinente, la Exposición de Motivos de la Ley Núm. 100 reza:

*"... Desde el 1980, los miembros del Tribunal Examinador reciben cincuenta ($50.00) dólares por concepto de dietas por cada día o fracción que prestare en sus servicios.*

*Esta Asamblea Legislativa considera necesario establecer que a partir del 1 de enero de 1997 los miembros del Tribunal Examinador recibirán dietas equivalentes a la dieta mínima establecida en el Artículo 2 de la Ley Núm. 97 de 19 de junio de 1968, según enmendada, para los miembros de la Asamblea Legislativa, para así evitar tener que enmendar continuamente este tipo de legislación con el fin de uniformar las dietas, acorde con el aumento en el costo de la vida."* (Enfasis nuestro.) Exposición de Motivos, Ley 100 de 4 de agosto de 1996.

De otro lado, el Código Político, según enmendado, dispone en torno a las dietas de los miembros de la Asamblea Legislativa, de la siguiente forma:

*"A los efectos de fijar el monto de esas dietas, la Junta de Planificación de Puerto Rico certificará a los presidentes respectivos de cada Cámara, no más tarde del 1ro. de junio del primer año del cuatrienio legislativo, la variación en el índice general de precios al consumidor a partir de la fecha de la última revisión de dietas efectuada en 20 de mayo de 1974. La dieta se determinará tomando como base el promedio entre la dieta menor y la mayor vigente al 20 de mayo de 1974, aplicándole el índice certificado por la Junta de Planificación restándose de este producto el promedio entre la dieta mayor y la menor. A dicho balance se le sumará la dieta básica vigente a la fecha de aprobación de esta ley, ajustándose al múltiplo de dólar inmediato inferior. Disponiéndose, que la Junta de Planificación de Puerto Rico deberá emitir la primera de estas certificaciones en tiempo para que al 1ro. de julio de 1985 se efectúe el primer ajuste a las mismas..."*. (Enfasis nuestro.) 2 LPRA Sec. 29.

De otra parte, la Sec. 1022 del Código de Rentas Internas de 1994 define el *"ingreso bruto"* como *"... ganancias, beneficios e ingresos derivados de sueldos, jornales o compensación por servicios personales ... de cualquier clase y cualquiera que sea la forma en que se pagaren, o de profesiones, oficios, industrias, negocios, comercio o ventas, o de operaciones en propiedad, bien sea mueble o inmueble que surjan de la posesión o uso o del interés en tal propiedad..."*. 13 LPRA Sec. 8422(a). También se incluyen como ingreso bruto *"... los derivados de intereses, rentas, dividendos, beneficios de sociedades, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad y ganancias o beneficios e ingresos derivados de cualquier procedencia."* Id.

No empece a lo anterior, el Código establece que ciertas partidas no estarán incluidas en el ingreso bruto y, por ende, estarán exentas de tributación. Entre tales partidas se encuentran los seguros de vida, ciertos intereses particulares, mejoras efectuadas por el arrendatario en la propiedad del arrendador, el estipendio recibido por

ciertos médicos durante el período de internado, etcétera.

El inciso 18 de la aludida sección 1022, 13 LPRA Sec. 8422(a)(18), referente a las dietas y gastos de viaje de los Legisladores, dispone que *"las cantidades recibidas por los miembros de la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico por concepto de dietas y gastos de viaje, las cuales representan reembolso de gastos que realmente se incurren"*, constituyen partidas que están excluidas del ingreso bruto, por lo que están exentas de tributación.

Finalmente, es norma reiterada que cuando la ley es clara los tribunales están obligados a observar su letra. Así, se ha resuelto que los tribunales no tienen autoridad para añadirle limitaciones o restricciones que no aparecen en el texto de la ley. *Comité Pro Permanencia de la Barrida Morales, Etc. v. OHN. Miranda Marín*, **2002 JTS 144**.

También se ha precisado que todas las leyes, aun las claras, requieren interpretación. Al hacerlo, el tribunal debe acudir primero, al texto de la ley. Cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Se ha resuelto consistentemente que ante un lenguaje inequívoco del Legislador, el texto de la ley es la expresión por excelencia de la intención legislativa. *Martínez Vázquez v. Administración de Compensaciones por Accidentes de Automóviles,* **2002 JTS 79**. Ahora bien, el texto de la ley sólo puede ser ignorado cuando es claramente contrario al verdadero propósito legislativo. Es en esta instancia que los tribunales deben consultar el historial legislativo del estatuto objeto de interpretación judicial. *Pérez Pérez v. Gobierno Municipal de Lares*, **2001 JTS 163**.

Así, los tribunales están autorizados a interpretar las leyes cuando: (1) éstas no son claras o concluyentes sobre un punto particular, (2) cuando se trate de suplir una laguna, (3) cuando se trate de mitigar los efectos adversos de aplicar una ley a una situación particular, y (4) cuando la justicia así lo requiere. *Alonso García v. Ramírez Acosta*, **2001 JTS 121**; *Pueblo v. De Jesús Delgado,* **2002 JTS 5**.

Por último, respecto a los estatutos contributivos, es la función judicial interpretar los mismos en forma justa, a tenor con sus propios expresos términos, y no en forma extensiva. *Continental Insurance Company v. Secretario de Hacienda*, **2001 JTS 71**; *Café Rico, Inc. v. Municipio de Mayagüez,* **2001 JTS 152**; *Vélez Rivera v. Bristol-Myers Squibb, PR*, **2002 JTS 129**.

### III

A pesar de que el recurrente reconoce que la Sección 1022(18) del Código de Rentas Internas no establece otra exención que la aplicable a las dietas de los Legisladores, es su contención que la Ley Núm. 100 de 1996, (que enmendó la Ley Núm. 22), al establecer que las dietas de los miembros del TEM serían **equivalentes** a las de los Legisladores, también tuvo el efecto de extender la exención de tributación de las últimas a los miembros del TEM. En apoyo de su razonamiento, el Dr. Vázquez Oliveras cita la definición del verbo *"equivaler"* según el Diccionario de la Lengua Española de la Real Academia Española. Argumenta que para que verdaderamente exista equivalencia o una cosa sea igual que la otra, las dietas de los miembros del TEM y las de los miembros de la Asamblea Legislativa deben ser iguales en estimación, valor, potencia y eficacia.

Igualmente, reclama que existe una valiosa razón de política pública que aconseja que las dietas de los miembros del TEM y las de los Legisladores sean verdaderamente equivalentes en todos los sentidos. Entiende que por ser los miembros del TEM médicos que donan su valioso tiempo para prestar un importante servicio público de gran responsabilidad, el Estado no debe penalizarlos con dietas que apenas sustituyen los gastos en que incurren sin que éstas sean exentas. No le asiste la razón.

Concluimos que el propósito de la Ley Núm. 22, según enmendada por la Ley Núm. 100, es que los miembros del TEM reciban dietas equivalentes al monto **mínimo** establecido para los miembros de la Asamblea

Legislativa. No se sostiene la interpretación del recurrente en el sentido de que también se extiende a los miembros del TEM la exención contributiva que específicamente provee el Código de Rentas Internas para las dietas de los miembros de la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico. 13 LPRA Sec. 8422.

Ciertamente, las exenciones contributivas, como gracias legislativas, no deben extenderse más allá de los términos expresados y exactos del estatuto que las otorga. Así, toda duda en torno a éstas debe ser resuelta en contra de la existencia de la exención. Véase *Lever Bros. Export Corp. v. Héctor Luis Acevedo, Alcalde de San Juan*, 140 DPR 152, 161-162 (1996), y casos allí citados, tales como *Texas Co. (P.R.) Inc. v. Tribunal de Contribuciones*, 82 DPR 134, 160-161 (1961); y *Gotay Lanuza v. Srio. de Hacienda*, 122 DPR 850 (1988). Nada hay en las leyes antes citadas que pueda sostener la posición del recurrente de que las dietas que reciben los miembros del TEM están exentas de tributación. El texto de la ley es claro, razón por la cual el primer error apuntado no se cometió.

Mediante el segundo error, el recurrente cuestiona que el Departamento de Hacienda no le permitiera enmendar su planilla para corregir la equivocación del Departamento de Salud en el Comprobante de Retención original. Precisa que interesa reclamar el reembolso, al que éste alega tener derecho, por los gastos incurridos en el desempeño de sus funciones públicas, los que, según éste, sobrepasan el monto de las dietas devengadas.

Un examen detenido de los documentos que forman parte del Apéndice, al igual que la comparecencia del Procurador General, reflejan que esta controversia particular nunca fue resuelta en los méritos por el Departamento de Hacienda. El Negociado analizó sólo el planteamiento del recurrente respecto a la exención de tributación de las dietas, mas no abordó el trato contributivo que debían tener tales dietas, en la alternativa de no prosperar dicho argumento, según lo planteó el Dr. Vázquez Oliveras. Sobre este aspecto, la Oficial Examinadora determinó que: "*... En cuanto a la alegación de que los gastos incurridos en el ejercicio de dicha función exceden las cantidades recibidas por concepto de dietas, el Querellante debió llenar su planilla teniendo en mente dichos gastos y evidenciando los mismos.*" (Énfasis nuestro.) Apéndice 1 del Recurrente, pág. 2.

Por su parte, en su comparecencia, el Procurador General enmarca la aludida controversia en la Sec. 6011 (e)(1) del Código de Rentas Internas, que regula el término en el cual un contribuyente puede presentar una reclamación de crédito o reintegro, después de haber radicado su planilla. 13 LPRA Sec. 8031(b)(1). ■ Aclara que el procedimiento para enmendar la planilla es el que el Código denomina como "*Reclamación de Crédito o Reintegro*". Explica que para ello, tal sección provee un período de cuatro años, a partir de la fecha en que la planilla o declaración fuese rendida por el contribuyente, o de tres años, desde la fecha en que la contribución fue pagada. Menciona también que la forma para llevar a cabo este procedimiento es la establecida en el "*Reglamento Relativo a la Ley de Contribuciones Sobre Ingresos de 1954*". ■ Sostiene que el Negociado de Procesamiento de Planillas del Departamento de Hacienda, es el llamado a emitir una determinación final respecto a las solicitudes de enmienda presentadas dentro del plazo dispuesto en ley, y que de tal decisión se podrá apelar a la Secretaría de Procedimiento Adjudicativo. Plantea, además, que el recurrente no ha evidenciado que tramitó una solicitud de enmienda de planilla de acuerdo al trámite descrito, por lo que el Negociado de Asistencia Contributiva y Legislación no tomó determinación alguna al respecto.

Evaluados los planteamientos de ambas partes, concluimos que se cometió el segundo error señalado. Habiendo el recurrente articulado su reclamo de reembolso de gastos en forma oportuna en la querella presentada el 21 de noviembre de 2001 ante el Negociado, procede que el Departamento de Hacienda, con su pericia, atienda y resuelva este planteamiento del recurrente. Entendemos que acorde con la Sección 322-3 del Reglamento de la Ley de Contribución de 1954 que el Procurador General cita, procede que el contribuyente enmiende la planilla de 1998, acreditando, conforme a la ley, los gastos alegadamente incurridos como miembro del TEM y que se dilucide la procedencia de los mismos.

## IV

Por los fundamentos expuestos, se expide el auto de revisión solicitado. Se confirma la Resolución emitida por el Negociado de Asistencia Contributiva y Legislación del Departamento de Hacienda el 17 de mayo de 2002 y notificada el 21 de mayo de 2002, en cuanto declaró no ha lugar la exención de tributación de las dietas devengadas por el recurrente en el 1998, y se revoca respecto al reclamo de éste sobre el reembolso de los gastos. En consecuencia, se devuelve el caso al Departamento de Hacienda para la continuación de los procedimientos en forma compatible con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 73

**1.** En dicha vista, el Dr. Vázquez Oliveras presentó como evidencia el Comprobante de Retención corregido.

**2.** Sec. 4.1 de la Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA Sec. 2171.

**3.** La tasación es el suceso mediante el cual el Departamento de Hacienda determina la deuda que se le puede cobrar al contribuyente. Cuando el contribuyente determina su responsabilidad contributiva, pero no somete el pago adecuado, la tasación pone al Secretario de Hacienda en posición de proceder al cobro de la cantidad auto-impuesta junto con los intereses y recargos dispuestos por ley. Escrito en Cumplimiento con Resolución presentado por el Procurador General el 18 de noviembre de 2002, pág. 4, n.1.

**4.** El error matemático se define en el Código de Rentas Internas como:
*"(g)...*

*(1)...*

*(2)...*

*(A)...*

*(B) Error matemático o administrativo El término 'error matemático o clerical' (sic) significa:*

*(i) un error de suma, resta, multiplicación o división que aparezca en cualquier planilla;*

*(ii) el uso incorrecto de cualquier tabla provista por el Código respecto a cualquier planilla si dicho uso incorrecto es aparente ante la existencia de cualquier otra información en la planilla;*

*(iii) [sic]) una entrada en una planilla de una partida que es inconsistente con otra entrada de la misma partida o con otra partida en dicha planilla;*

*(iv) cualquier omisión de información que se requiere sea incluida en la planilla para evidenciar una entrada en la planilla, y*

*(v) una entrada en una planilla de una deducción o crédito en una cantidad que exceda el límite estatutario impuesto por este Subtítulo si tal límite es expresado-*

*(I) como una cantidad monetaria específica, o*

*(II) como un porcentaje, proporción o fracción si las partidas que entran en la aplicación de dicho límite aparecen en*

*dicha planilla".* 13 LPRA Sec. 8022.

**5.** Dicha Sección establece:

*"(a)...*

*(b) Limitaciones.-*

*(1) Período de prescripción.- A menos que una reclamación de crédito o reintegro sea radicada por el contribuyente dentro de cuatro (4) años desde la fecha en que la planilla o declaración fue rendida por el contribuyente o dentro de tres (3) años desde la fecha en que la contribución fue pagada, no se concederá o hará crédito o reintegro alguno después del vencimiento de aquél de dichos períodos que expire más tarde. Si el contribuyente no hubiere rendido planilla o declaración, entonces no se concederá o hará crédito o reintegro alguno después de tres (3) años desde la fecha en que la contribución fue pagada, a menos que antes del vencimiento de dicho período el contribuyente radicare una reclamación por dicho crédito o reintegro...".*

**6.** El Reglamento relativo a la Ley de Contribuciones Sobre Ingresos de 1954 dispone en la parte pertinente del Artículo 322-3, sobre reclamaciones de reintegro por el contribuyente, lo siguiente:

*"**Las reclamaciones del contribuyente sobre reintegros de contribución, intereses, penalidades y adiciones a la contribución que sean erróneas o ilegalmente cobradas serán hechas** en la Forma 452.0 o en la Forma 480.0 ó 480.0A, o en una planilla enmendada y debe ser radicada con el Colector de Rentas Internas o el Negociado de Contribuciones. Se debe hacer una reclamación separada para cada año contributivo o período"*. (Enfasis suplido a la traducción nuestra.)